**Franklin A. KLAIR, Charlotte Dudkewitz, and Bank of Delaware, as Trustee, Defendants Below, Appellants,**

**v.**

**Dale L. REESE and John W. Holsten, t/a Able Associates, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: May 12, 1987.
Decided: Sept. 16, 1987.

---

Thomas Herlihy, III (argued), Herlihy and Wier, Wilmington, for appellants Klair and Dudkewitz.

Andrew P. Taylor, Cooch and Taylor, Wilmington, for appellant Bank of Delaware.

John R. Carrow, Wilmington, Guardian ad litem.

Richard J. Abrams, Richards, Layton & Finger, Wilmington, for appellees.

Before CHRISTIE, Chief Justice, MOORE, and WALSH, Justices.

CHRISTIE, Chief Justice:

This appeal centers on the parties' divergent interpretations of a purchase option provision in a long-term ground lease which grants the tenants the right to purchase the "leasehold premises ... for a consideration to be determined at the then value of the land." The tenants, Dale L. Reese and John W. Holsten, t/a Able Associates, who have exercised their option to purchase the land, contend that this provision calls for the land to be valued as encumbered by their remaining leasehold interest of over 70 years. The landowners, Franklin A. Klair, Charlotte Dudkewitz, and the Bank of Delaware as trustee under the will of Norman E. Klair and by agreement with Ethel Helen Klair (the parents of Franklin and Charlotte), contend that the language calls for the land to be valued as a fee simple, without the lease encumbrance.[1]

In a declaratory judgment action brought by tenants, the Court of Chancery granted summary judgment in favor of tenants on the valuation issue. The court ruled that the dispositive provisions clearly called for a lease encumbered valuation and that it was not necessary to consider extrinsic evidence concerning the parties' intent, their course of conduct, or the standard practice within the industry. We find that under the circumstances the court erred in failing to consider the relevant extrinsic evidence, and we reverse and remand for further proceedings.

---

1. This position is also taken by John R. Carrow, Esquire, guardian *ad litem* representing the interests of minor and various unborn issue under the trusts.

## I.

The parties concede that their respective rights and duties with respect to purchase options are governed by a lease agreement which was first executed in 1959 and then assigned to tenants and re-executed with certain modifications in 1961. In June, 1959, Ralph E. Gordy, as President of Kirkwood Shopping Center, Inc., entered into a lease agreement with Norman and Ethel Klair whereby Gordy agreed to lease from the owners the 22.6 acres of land now in dispute. In 1961, Gordy assigned his interest in the land to the tenants. In December, 1961, tenants renegotiated and re-executed the lease agreement with the Klair family.

Under paragraph 23 of the 1961 agreement the tenants held two exclusive purchase options. The first, in effect from 1972 to 1982, granted tenants the right to purchase all of the leasehold premises for $300,000.00. Paragraph 23(c) set forth the second purchase option as follows:

A further and exclusive option to purchase all of the *leasehold premises* is hereby granted by the Landlord (Seller), to Tenant (Purchaser) to begin [on December 16, 1981] and to run for the balance of this Leasehold Agreement, *for a consideration to be determined at the then value of the land,* in accordance with an appraisal to be made by three (3) members of the Wilmington Real Estate Board, one to be chosen by each of the parties hereto and the third by the two so chosen ..." (emphasis added).

By letter dated April 29, 1982 and in discussions held shortly thereafter, the tenants notified the landowners that they planned to exercise their option to purchase the leasehold premises pursuant to the second purchase option set forth in paragraph 23(c). Almost immediately, a dispute arose as to whether the purchase price pursuant to the option should be determined by an appraisal which reflected the value of the land as encumbered or as unencumbered by the lease. The landowners, in accordance with the terms of the option clause, appointed an appraiser and asked the tenants to do the same. Instead the tenants chose to press the landowners for an agreement as to the procedures and standards to be used in developing the appraisals. Neither side acceded to the requests of the other.

An appraisal completed in 1982 for the landowners stated that the unencumbered fee value of the leased premises was $1,695,000.00, but that the landowners' interest encumbered by the long-term lease was worth only $145,000.00. An appraisal of land as encumbered reflects the value of the landowners' interest in the land under the long-term lease, *i.e.*, the present value of their right to receive $14,400 in rent for the 74 years remaining on the 100–year lease, plus the value of their reversionary interest in the fee simple after the lease expires. The encumbered value of the land is much less than the unencumbered value in this case because the tenants have a lease at a very favorable rent which will run for more than 70 years. Apparently the owners' reversionary interest in the land at the present time was assigned a very limited economic value. The value of the encumbered fee therefore was deemed to approximate the value of a $14,400 annual annuity (which is equal to the annual rent) despite the fact that the fair market price of the unencumbered fee has soared since the lease was executed.

In any case, the parties were unable to resolve their disagreement and, by letter dated January 17, 1983, tenants notified the landowners that they were withdrawing their exercise of the purchase option. The landowners responded almost a year later by stating that tenants had breached the purchase option provisions of the 1961 lease agreement thereby losing all rights under the agreement and that the landowners considered the tenants to be holdover tenants at sufferance.

In February, 1984, the tenants filed this action in the Court of Chancery maintaining that their withdrawal of their exercise of the option was valid; that they were entitled to continue renting the shopping center for the balance of the term pursuant to the 1961 agreement; and that if they ever in the future decided to exercise their

option to purchase under paragraph 23(c) of the lease agreement, the purchase price would equal the then fair market value of the land as encumbered by the lease.

The parties produced documentary and testimonial evidence to support their contrary interpretations of the second purchase option provision. The landowners relied in particular on the depositions of Franklin Klair and Charlotte Dudkewitz and an affidavit by Ralph Gordy. Franklin Klair and Charlotte Dudkewitz stated that although they did not participate in the negotiations that led to the 1961 agreement they were under the impression that the land would never be worth less than $300,-000.00. Mr. Gordy, who negotiated the 1959 lease on which the 1961 lease was based, stated therein that the same language in the 1959 lease meant that the land would be valued as unencumbered by the lease. The landowners contended that these statements supported their view that the contract called for the land to be valued without encumbrances or that there was a failure of mutual assent in the formation of the provision.

On cross-motions for summary judgment, the Court of Chancery ruled as an initial matter that the tenants' exercise of their option to purchase the land created a binding contract for the sale of the land from which the tenants could not withdraw. The court then ruled that the tenants did not breach the terms of the agreement because of their failure to appoint an appraiser. The court found that both sides undertook reasonable, if divergent, steps to resolve their disagreement over how the land was to be valued.

On the issue of whether the land subject to the option should be valued as encumbered by the lease, the court relied on a legal presumption which states that absent clear provisions to the contrary, the law presumes that land is to be appraised as encumbered by existing leaseholds—at least when the leases have a negative impact on the land's value. Finding that the contract did not clearly provide for an unencumbered valuation, the court applied the presumption and ruled that the land

should be valued as encumbered. In light of the presumption, the court considered the dispositive provisions "clear" in calling for an encumbered valuation and declined to consider extrinsic evidence that might shed light on the meaning of the critical language as used by the parties to the 1961 agreement.

The court also rejected the argument that there was a failure of mutual assent, finding that there was no reliable evidence that the persons who actually negotiated the 1961 agreement were not in complete accord.

## II.

The proper interpretation of language in a contract, while analytically a question of fact, is treated as a question of law both in the trial court and on appeal. *Restatement (Second) of Contracts* § 212, comment d (1981); 4 *W. Jaeger, Williston on Contracts* § 616 (3d ed. 1961). An appellate court will make its own interpretation of the contractual language, since it is in as good a position as the trial court to do so. *Restatement (Second) of Contracts* § 212, comment d (1981); *See Radio Corp. of America v. Philadelphia Storage Battery Co.*, Del.Supr., 6 A.2d 329 (1939); *Emor Inc. v. Cyprus Mines Corp.*, 467 F.2d 770 (3d Cir.1972) ("Appellate courts have untrammeled power to interpret written documents."). If the interpretation of the trial court rests not on its reading of the agreement but on findings of fact concerning evidence beyond the four corners of the contract ("extrinsic evidence") or on inferences drawn from those findings, the appellate court will defer to the trial court's interpretation unless the findings are not supported by the record or the inferences and deductions are either not supported by the record or not the product of an orderly or logical deductive reasoning process. *E.I. Dupont de Nemours v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108 (1985); *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972).

In this case, the trial court appears to have relied solely on its reading of the contract in light of a legal presumption. It specifically declined to consider the extrin-

sic evidence bearing on the proper interpretation of the language at issue. Its method of legal analysis, its reading of the contract, and its decision to rely upon a legal presumption are all matters of law subject to independent analysis on appeal.

## III.

### A.

In interpreting an integrated agreement, attention is directed to the meaning of the written terms in light of the surrounding circumstances. *Restatement (Second) of Contracts* § 212(1) (1981). As long as the court is aware that doubts and uncertainty lurk in the meaning and application of agreed language, it will consider testimony pertaining to antecedent agreements, communications and other factors which bear on the issue. *Cities Service Co. v. Gardinier, Inc.*, Del.Super., 344 A.2d 254, 258, *aff'd*, 349 A.2d 744 (1975). The primary search is for the common meaning of the parties, not a meaning imposed on them by law. *Restatement (Second) of Contracts* § 201, comment c (1981); *see E.I. DuPont de Nemours v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108, 1113 (1985).

It is sometimes said that if a writing is plain or clear on its face, there is no room for interpretation, construction, or a search for the intent of the parties. *See e.g., Myers v. Myers*, Del.Supr., 408 A.2d 279, 280 (1979); *Nepa v. Marta*, Del.Supr., 415 A.2d 470, 473 (1980). In many such cases, the court has in fact carefully weighed the evidence of surrounding circumstances but has found such evidence of inconsequential weight or is unwilling to draw the inferences therefrom which the losing party has urged it to draw. 3 *A.*

*Corbin, Corbin on Contracts* § 542 (1960). Or, the court may rely on "plain meaning" when the language used in the contract has a generally prevailing meaning and there is no evidence that the parties intended the language to have any other meaning. *See Myers v. Myers*, Del.Supr., 408 A.2d at 280. However, the court is not free to exclude or disregard extrinsic evidence; for the meaning of words used in an agreement can only be known through an appreciation of the context and circumstances in which they were used. For this reason, the *Restatement (Second) of Contracts* (see § 212, especially comment b), the Uniform Commercial Code (6 *Del.C.* § 2–202), as well as Williston (4 *W. Jaeger, Williston on Contracts* § 629 (3rd ed. 1961)) and Corbin (3 *A. Corbin, Corbin on Contracts* § 542 (1960)) all reject the proposition that extrinsic evidence can be excluded in determining the meaning of an agreement.

Under the modern view, the court must consider the statements of the parties concerning the meaning of the writing as well as evidence such as trade usage or course of dealing. *Restatement (Second) of Contracts* § 212, comment c (1981); 3 *A. Corbin, Corbin on Contracts* § 543 (1960). If the parties attached different meanings to an agreement or a term thereof at the time the agreement or term was formed, there may be a failure of mutual assent with respect to that agreement or term. The rules for determining which party's meaning prevails or if there has been a failure of mutual assent are set forth in *Restatement (Second) of Contracts* § 201 (1981).[2]

### B.

In view of these principles, we conclude that the Court of Chancery erred as a

---

2. **§ 201.** Whose Meaning Prevails
 (1) Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.
 (2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made
 (a) that party did not know of any different meaning attached by the other, and the other

knew the meaning attached by the first party; or
 (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.
 (3) Except as stated in this Section, neither party is bound by the meaning attached by the other, even though the result may be a failure of mutual assent.

matter of law in resolving the meaning of paragraph 23(c) by resort to a presumption favoring an encumbered valuation without considering the extrinsic evidence bearing on the issue. Since the aim of contract interpretation is to determine and give effect to the meaning of the parties rather than to impose a different meaning on them, legal presumptions should be used only if examination of all the relevant evidence fails to uncover the parties' intentions as manifested in the writing. *See Dutra De Amorim v. Norment*, Del.Supr., 460 A.2d 511, 514 (1983) (dealing with construction of the language of a trust). Even if we assume that the court in fact carefully considered the extrinsic evidence in the record, it erred in relying on a legal presumption to resolve the issue because the cases cited in support of the presumption are either unpersuasive or are distinguishable on their facts.

The decisions cited in support of a presumption in favor of an encumbered valuation in the context of an option to purchase land are based on the doctrine of merger of estates rather than an inquiry into the intentions of both parties as manifested in the writing. *William P. Rae Co. v. Courtney*, N.Y., 250 N.Y. 271, 165 N.E. 289 (1929); *Contos v. Lipsky*, Fla.App., 3rd Dist., 433 So.2d 1242 (1983). In our view, the dissenting judge in the *Contos* decision took the better approach in focusing "simply upon what the parties meant by the option to purchase provision in their lease." 433 So.2d at 1247–1248. The approach of the *Contos* dissent was adopted by a different Florida appellate court in *Palm Pavilion of Clearwater v. Thompson*, Fla.App., 2nd Dist., 458 So.2d 893 (1984).

The Court of Chancery also relied on New York cases which establish a presumption favoring valuation of land as encumbered in the context of agreements setting rent as a percentage of the value of the lessor's property. The first such case concerned a provision setting rent at six percent of the true market value of the land. *United Equities, Inc. v. Mardordic Realty Co.*, N.Y.App.Div., 8 A.D.2d 398, 187 N.Y.S.2d 714, *aff'g* N.Y.Supr., 16 Misc.2d 996, 182 N.Y.S.2d 901 (1959), *aff'd per curiam*, N.Y., 7 N.Y.2d 911, 165 N.E.2d 426, 165 N.E.2d 426 (1960). The court ruled that "unless there be an express provision to the contrary, the provisions of the lease between the parties insofar as they affect the fair market value of the land must be given effect." *Id.* at 717. Finding no such express language, the court ruled that the value of the land was to be determined by reference to two renewal options of 21 years each. *Id.; See Hotel Plaza Associates v. Wellington Associates, Inc.*, N.Y.Supr., 55 Misc.2d 483, 285 N.Y.S.2d 941 (1967), *aff'd*, N.Y., 22 N.Y.2d 846, 293 N.Y.S.2d 108, 239 N.E.2d 736 (1968).[3]

In the rent setting context described in these cases, valuation of the land as encumbered by the lease is reasonable because the land will continue to be encumbered by the lease. There is less reason, however, to presume that the parties intended that the land in question be valued as encumbered in a purchase option context when the purchase will terminate the encumbrance. The exercise of a purchase option creates ambiguity not present in the rent setting context and demonstrates the necessity of an inquiry into the circumstances surrounding the formation of the contract and consideration of the parties' testimony as to their intent to determine the meaning of the contractual language.

## C.

On remand the court should take a fresh look at the landowners' contention that the parties who negotiated the 1961 lease agreement may have attached a materially

---

**3.** The *United Equities* and *Hotel Plaza* decisions distinguished cases wherein the lessor had specifically provided in the agreement that the value of the land was to be determined "free of lease and unencumbered," *Ruth v. S.Z.B. Corp.*, N.Y.Supr.Ct., 2 Misc.2d 631, 153 N.Y.S.2d 163, *aff'd*, N.Y.App.Div., 2 A.D.2d 970, 158 N.Y.S.2d 754 (1956), or by a percent of the "land only." *185 Lexington Holding Corp. v. Holman*, N.Y.Supr., 189 N.Y.S.2d 269, 19 Misc.2d 521 (1959), *reh'g denied*, N.Y.App.Div., 10 A.D.2d 569, 197 N.Y.S.2d 404, *aff'd*, N.Y., 8 N.Y.2d 965, 204 N.Y.S.2d 345, 169 N.E.2d 8 (1960).

different meaning to the language concerning the purchase of the land. The court addressed this contention briefly, finding that landowners had not produced any reliable evidence to show that the persons who actually negotiated the 1961 agreement were not in complete accord. However, its finding may have been colored by its previously reached conclusion that the dispositive provisions in the agreement were clear and by its view that "absent strong proof" it could not upset a contract which has existed for over twenty-five years. Lack of mutual assent as to a purchase option term would render that term invalid but would not necessarily invalidate the underlying lease agreement provided the purchase option term was not essential. *See Restatement (Second) of Contracts* § 201, illust. 5 (1981). In any event, summary judgment on the issue would be improper if the evidence, when viewed in a light most favorable to the landowners, raises a genuine issue as to whether there was a failure of mutual assent. *Vanaman v. Milford Memorial Hospital*, Del.Supr., 272 A.2d 718, 720 (1970); *Alexander Industries, Inc. v. Hill*, Del.Supr., 211 A.2d 917 (1965).

## IV.

Landowners also contend that, if a valid purchase option term was in fact entered into calling for an "as encumbered" valuation, the term is unconscionable and therefore unenforceable and that in any event the tenants breached the contract for sale by attempting to withdraw the exercise of their option. Tenants cross-appeal contending that the Court of Chancery erred in (apparently) setting the valuation date at a point in time after the conclusion of this litigation. The tenants argue that the appraisal should be made as of the option exercise date, April 29, 1982. These issues will be ripe for decision only if it is determined that the parties entered into a valid option term. We decline to resolve them now, but instruct the court on remand to clarify its ruling with respect to the date of the appraisal if it reaches that issue.

\* \* \* \* \* \*

In sum, we reverse the grant of summary judgment declaring that the 1961 agreement provides for the land to be appraised as encumbered by tenants' leasehold interest. We remand the case to the Court of Chancery for a determination as to the meaning of the contract in light of all the relevant circumstances including the testimony of the parties.