EMPIRE OF AMERICA RELOCATION
SERVICES, INC., Defendant
Below, Appellant,

v.

COMMERCIAL CREDIT COMPANY,
Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 13, 1988.
Decided: Nov. 28, 1988.
Reargument Denied: Dec. 20, 1988.

George H. Seitz, III, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Richard E. Moot (argued), and Michael E. Ferdman, of Moot & Sprague, Buffalo, N.Y., on behalf of appellant.

E. Norman Veasey and Robert W. Whetzel, of Richards, Layton & Finger, Wilmington, Jefferson V. Wright (argued), and James R. Eyler, of Miles & Stockbridge, Baltimore, Md., on behalf of appellee.

Before HORSEY, MOORE and HOLLAND, JJ.

HOLLAND, Justice:

This appeal relates to the sale by Commercial Credit Company ("Commercial Credit") to Empire of America Relocation Services, Inc. ("Empire") of all of the issued and outstanding stock of Relocation Realty, Inc. ("Relocation Realty"). Prior to the sale, Relocation Realty was a wholly owned subsidiary of Commercial Credit. The sale was effectuated by a Stock Purchase Agreement dated December 21, 1985 ("Agreement") and two amendments to the Agreement, each dated January 24, 1986.

The subject matter of this litigation is the purchase price which Empire was to pay for the Relocation Realty stock. The dispute concerns whether or not the amended Agreement requires inclusion of Relocation Realty's federal tax receivables,[1] as an asset, on the year end audited balance sheet (the "Valuation Date Balance Sheet"). That issue is pivotal in this case because the amended Agreement provided for the Valuation Date Balance Sheet to be utilized in determining the final purchase price.

---

1. This term refers to the negative tax liabilities created by Relocation Realty's net operating losses and unused investment tax credits for the calendar year 1985.

The parties agreed that the issue of the inclusion or exclusion of 1985 tax receivables on the Valuation Date Balance Sheet could be appropriately resolved by the Superior Court as a matter of law. That question was presented to the Superior Court by cross-motions for summary judgment. Thereafter, the Superior Court, *sua sponte*, requested the parties to address the question of what effect should be given, under the amended Agreement, to the determination of book value by the parties' independent auditor, Peat, Marwick, Mitchell & Company ("Peat Marwick").

The Superior Court rendered its decision on November 17, 1987. The Superior Court granted Commercial Credit's motion for partial summary judgment.[2] The Superior Court determined that the amended Agreement required inclusion of the tax receivables on the Valuation Date Balance Sheet. The Superior Court also decided that the findings of Peat Marwick concerning the book value of Relocation Realty was conclusive and binding upon the parties.

We will not review the merits of the Superior Court's decision. We have decided that there are material disputes of fact in the record which precluded a grant of either motion for summary judgment. On that procedural basis, the decision of the Superior Court is reversed.

### Background Facts

In December, 1985, Commercial Credit executed an agreement to sell to Empire all the issued and outstanding stock of Relocation Realty. Prior to the closing of the sale, discussions ensued between the parties regarding various aspects of the Agreement. As a result of these discussions, Commercial Credit and Empire entered into two amendments to the Agreement.

Amendment No. 2 provided that a certain portion of the purchase price, relating to tax receivables, would be withheld at closing (the "Tax Hold–Back") pending preparation of the Valuation Date Balance Sheet. The parties agreed to have Peat Marwick prepare the Valuation Date Balance Sheet. Amendment No. 2 purported to describe the method by which that portion of the purchase price attributable to the tax receivables would be calculated and paid by Empire to Commercial Credit. When the Valuation Date Balance Sheet was completed by Peat Marwick, it included the tax receivables as an asset.

Empire refused to pay that portion of the purchase price which was attributable to the tax receivables. Commercial Credit commenced this action by filing a complaint in the Superior Court. Commercial Credit contended that the Agreement and its amendments specifically require inclusion of the tax receivables on the Valuation Date Balance Sheet. Empire denied the allegations in the complaint and contended that the amended Agreement called for an opposite conclusion.

### Procedural Record

Both parties filed motions for summary judgment in the Superior Court. Each party argued that there was no dispute of material fact because the terms and conditions of the amended Agreement were clear and unambiguous. Each party requested the Superior Court to interpret the amended Agreement as a matter of law.

However, when the cross-motions for summary judgment were filed, they were each accompanied by opposing affidavits. Super.Ct.Civ.R. 56. Each party's interpretation of the amended Agreement and respective version of the pre-closing events was set forth in the affidavits. Thus, the parties created a "paper record" which went beyond the face of the amended Agreement.

When the affidavits are considered, a sharp disagreement among the

---

2. The cross-motions related to liability. After the Superior Court's decision, the parties entered into a stipulated judgment as to damages. An order of judgment and final judgment in favor of Commercial Credit in the amount of $882,447.00, plus costs and pre- and post-judgment interest, was entered by the Superior Court on March 30, 1988. Empire filed a timely notice of appeal from that judgment on April 21, 1988.

parties, regarding their intention and the meaning of the pertinent contractual provisions, becomes apparent. Nevertheless, the Superior Court interpreted the amended Agreement without reliance on the extrinsic evidence in the affidavits. As this Court stated in *Klair v. Reese*, Del.Supr., 531 A.2d 219 (1987):

> As long as the court is aware that doubts and uncertainty lurk in the meaning and application of agreed language, it *will* consider testimony pertaining to antecedent agreements, communications and other factors which bear on the issue. The primary search is for the common meaning of the parties, not a meaning imposed on them by law.... [T]he court *is not free to exclude or disregard extrinsic evidence;* for the meaning of words used in an agreement can only be known through an appreciation of the context and circumstances in which they were used.

*Id.* at 223 (citations omitted) (emphasis added).

The Superior Court is to be commended for attempting to decide a dispute which was submitted to it on cross-motions for summary judgment. However, cross-motions for summary judgment are not the procedural equivalent of a stipulation for a decision on a "paper record."

> [T]he function of the judge in passing on a motion for summary judgment is not to weigh evidence and to accept that which seems to him to have the greater weight. His function is rather to determine whether or not there is any evidence supporting a favorable conclusion to the nonmoving party. When that is the state of the record, it is improper to grant summary judgment.

*Continental Oil Co. v. Pauley Petroleum, Inc.*, Del.Supr., 251 A.2d 824, 826 (1969). It is imperative that the court consider whether there is a genuine issue of material fact each time such motions are presented. *State ex rel. Mitchell v. Wolcott*, Del. Supr., 83 A.2d 759, 762 (1951); *accord, Rains v. Cascade Indus.*, 402 F.2d 241, 245 (3d Cir.1968) ("the making of such inherently contradictory claims [i.e., cross motions

for summary judgment] does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."); 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.13 (2d ed. 1988).

### Conclusion

There is no right to summary judgment. *Cross v. Hair*, Del.Supr., 258 A.2d 277, 278 (1969). Where the court is presented with cross-motions for summary judgment, neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law. *Wilson v. Joma, Inc.*, Del.Supr., 537 A.2d 187, 188 (1988). Summary judgment must also be denied if there is a dispute regarding the inferences which might be drawn from the facts. *Schagrin v. Wilmington Medical Center, Inc.*, Del.Super., 304 A.2d 61, 63 (1973).

The material facts that have been placed in dispute by the opposing affidavits are indicative of the parties' intentions. The inferences to be drawn from those intentions are indispensable to an interpretation of the amended Agreement. Therefore, it was inappropriate to grant summary judgment to either party. *See George v. Frank A. Robino, Inc.*, Del.Supr., 334 A.2d 223, 224 (1975) (per curiam); *Continental Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d at 826.

The decision of the Superior Court granting summary judgment to Commercial Credit is REVERSED. This case is remanded to the Superior Court for further proceedings that are consistent with this opinion.

### On Motion for Reargument

This 20th day of December, 1988, the Court has before it Commercial Credit's motion for reargument. In its motion, Commercial Credit alleges that the decision of this Court establishes an erroneous principle of law, i.e., that a threshold determination of ambiguity is unnecessary before considering extrinsic evidence outside of an

agreement. Commercial Credit's motion also contends that"[a]ffidavits which set forth merely a differing interpretation of an agreement or a differing intent in entering into an agreement are insufficient to establish the existence of a dispute of material facts. To hold otherwise would turn the 'four-corners rule' on its head."

The traditional legal principles which are used in ruling on a motion for summary judgment, concerning the interpretation of an integrated agreement, have previously been summarized by this Court. *Klair v. Reese*, Del.Supr., 531 A.2d 219, 223 (1987). Those well established principles were specifically relied upon in this case. In that decision, we reiterated that when deciding a motion for summary judgment, in a contract dispute, "[a]s long as the court is aware that doubts and uncertainty lurk in the meaning and application of agreed language, it will consider testimony pertaining to antecedent agreements, communications and other factors which bear on the issue." *Id.* In this case, the affidavits of the parties raise doubts and uncertainties about the meaning and application of the "agreed language" concerning the net operating losses (NOLs) and the binding nature of Peat Marwick's audit.

In *Klair v. Reese*, this Court reversed a decision granting summary judgment, because it appeared from the extrinsic evidence that the parties may have attached a materially different meaning to the "agreed language" in a lease, at the time the lease was negotiated. *Id.* at 224–25. This Court held that "[i]f the parties attached different meanings to an agreement or a term thereof at the time the agreement or term was formed, there may be a failure of mutual assent with respect to that agreement or term." *Id.* at 223. That issue is present in this case because, assuming arguendo that the terms of the amended agreement are unambiguous, the affidavits of the parties are diametrically opposed and raise a material dispute of fact as to whether or not there was mutual assent when the amended agreement was signed.

However, in this case, the terms of the amended agreement were ambiguous because they were, in fact, in conflict. In its decision, the Superior Court said:

> While the operative documents do indeed require an unqualified auditor's opinion, and while this requirement is in apparent conflict with the provisions involving NOLs and the related provisions which contemplate an exception to GAAP [generally accepted accounting principles], I am satisfied that the requirement for an unqualified opinion must fall.

The Superior Court then proceeded to apply general rules of contract construction to resolve the conflict, rejected the interpretation suggested by Empire, and found that the amended agreement was unambiguous. However, in interpreting an agreement, especially one with internal conflicts, the "primary search is for the common meaning of the parties, not a meaning imposed on them by law." *Klair v. Reese*, 531 A.2d at 223.

We recognize that the agreement between Empire and Commercial Credit is governed by the substantive law of the State of New York. The substantive law of the State of New York is consistent with the general legal principles recognized by this Court in a similar procedural context in *Klair v. Reese*. *See Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 468 N.Y.S.2d 649, 654 (N.Y.A.D. 2 Dept.1983); *Bank Itec N.V. v. J. Henry Schroeder Bank & Trust Co.*, 612 F.Supp. 134, 138 (S.D.N.Y.1985).

Commercial Credit's motion for reargument is DENIED.