Suburban v. Trianco                    CV-94-403-M    12/18/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Suburban Propane, L.P.,
          Plaintiff
     v.                                        Civil No. 94-403-M
Trianco-Heatmaker, Inc.;
Davidson, Gourley & Acker, Inc.; and
Lakeview Condominium Association, Inc.,
          Defendants
     v.
Washington Resources Group, Inc.,
     Third Party Defendant


**O R D E R**


Defendant Trianco-Heatmaker, Inc. ("THI") brought a third-party complaint against Washington Resources Group, Inc. seeking indemnification in the event Suburban Propane succeeded in its contribution action against THI.  Washington moves for summary judgment contending that it has no obligation to indemnify THI against Suburban's claims.  For the following reasons, summary judgment is granted in part and denied in part.


**Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party first must show the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the

opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine factual issue exists if a reasonable jury could decide the issue in favor of the nonmoving party, and a fact is material if its resolution can affect the outcome of the suit under the applicable substantive law. See Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 49 (1st Cir. 1997). The court interprets the record in the light most favorable to the nonmoving party, Suburban in this case, and resolves all inferences in its favor. Saenger Organization v. Nationwide Ins. Assoc., 119 F.3d 55, 57 (1st Cir. 1997). Nevertheless, Suburban cannot rest on conclusory allegations, unsupported inferences, or speculation to avoid summary judgment on issues it bears the burden to prove at trial. Woods-Leber, 1997 WL 476360 at *2. Thus, summary judgment will be granted if the record shows no trial worthy factual issue and if the moving party, Lakeview here, is entitled to judgment as a matter of law. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).


## Background

Suburban's contribution action against THI arises from an underlying tort suit that sought compensation for injuries caused by a malfunctioning heating unit manufactured by AMTI Heating Products, Inc. The plaintiffs in the underlying tort suit were

2

injured (two people died), in March of 1993. Suburban, named in the underlying suit, settled the plaintiffs' claims and now seeks contribution from others whom it alleges are joint tortfeasors, including THI. Suburban's contribution claim against THI alleges that THI is liable for the malfunction of the heating unit manufactured by its predecessor, AMTI. Suburban alleges defective design and manufacture and failure to provide adequate warnings of dangers associated with the heating unit.

Business dealings involving Washington, AMTI, and THI began in 1989. At that time, Washington entered into an agreement with THI, a newly formed company, under which THI purchased the assets of Washington's subsidiary company, AMTI, a manufacturer of hot water and heating units. Then, THI purchased AMTI's stock in 1992, pursuant to a separate agreement. The assets and stock purchase agreements include indemnification provisions that THI contends obligate Washington to indemnify THI for any liability to Suburban in this action. THI argues, alternatively, that common law also requires indemnification by Washington.

## Discussion

In its motion for summary judgment, Washington asserts that THI is not entitled to indemnity under either agreement's express indemnification provision and that no common-law right to indemnification exists when express indemnity provisions are included in the parties' agreements. The parties agree that Delaware law controls THI's indemnification claims.

3

Under Delaware law, the meaning of a contract provision presents a legal question. Rhone-Poulenc v. American Motorists Ins., 616 A.2d 1192, 1195 (Del. 1992). The intent of the parties, as expressed in the contract language and in the context of the contract taken as a whole, controls contract construction. See Northwestern Nat'l Ins. Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del. 1996); Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992). "Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning." Northwestern National, 672 A.2d at 43. Extrinsic evidence or collateral circumstances may be considered only if the contract language is first found to be ambiguous. Citadel, 603 A.2d at 822.

## A.    The Assets Purchase Agreement Indemnification Provision

THI relies on the following provisions of the indemnification clause in the assets purchase agreement, as amended:

Indemnification by [AMTI] and [Washington]

(a) Subject to the limitation contained in paragraph 13, [AMTI] and [Washington] will jointly and severally indemnify and hold harmless [THI] against and in respect of:

. . .

(ii) any and all of [AMTI's] liabilities or obligations which have accrued on or before [February 21,1989] and arise out of any breach of any of the leases, contracts or agreements to be assigned to [THI] hereunder because of events occurring on or before [February 21, 1989];

(iii) any and all liabilities and obligations of or claims against [AMTI] or [Washington] or claims against the property acquired or to be acquired

4

from [AMTI] or [Washington] hereunder except the liabilities and obligations assumed by [THI] hereunder and set forth on Exhibit H; and

(iv) any and all actions, suits, proceedings, demands, assessments, judgments, costs and legal and other expenses incident to any of the foregoing;

provided however, that [THI] shall not be entitled to indemnification by [AMTI] and [Washington] with respect to any product warranty claims or the inability of [THI] to collect receivables purchased from [AMTI].

1.   Scope of the Indemnification Provision

Washington argues that because Suburban's claims against THI allege the failure of an AMTI product, the claims should be construed as product warranty claims, which are expressly excluded from the indemnification agreement.[1]  THI contends that "product warranty claims," within the meaning of the exclusion from the indemnity agreement, are the product warranties that AMTI sold to its customers prior to the date of the assets purchase agreement.  THI points out that Suburban, based on the underlying plaintiffs' tort claims, alleges strict product liability and negligence tort claims, not warranty claims, against it.

Washington offers no precedent or analysis to support its conclusion that Suburban's claims against THI, despite their plain language, should be construed to be "product warranty

_____

[1]Washington argues in reply that the indemnification provision does not apply to product liability claims because they are not specifically included in the clause.  Contrary to Washington's argument, the clause provides for indemnification in the broadest of terms, "any and all liabilities and obligations," rather than describing particular types of claims covered.

5

claims" under Delaware or any other law.  See, e.g., <u>Danforth v.</u>
<u>Acorn Structures, Inc.,</u> 608 A.2d 1194, 1196 (Del. 1992)
(distinguishing between product liability tort concepts and
contract based warranty claims); <u>Buttrick v. Lessard,</u> 110 N.H. 36
(1969) (recognizing strict product liability tort theory in
addition to negligence and warranty theories of liability).
Accordingly, Washington has not carried its burden of showing
that the language is either ambiguous or plainly excludes product
liability and negligence claims from the scope of the
indemnification provision.


   2.   <u>Time Limitation</u>

   The indemnification provision, by its own terms, is subject
to the limitations provided in paragraph thirteen of the
agreement.  Washington contends that the time limit provided in
paragraph thirteen has expired and bars THI's indemnification
claim under the agreement.  Paragraph thirteen provides in
pertinent part as follows:

> Except as otherwise provided herein, all
> representations, warranties, covenants and agreements
> set forth in this Agreement and in any certificate or
> instrument delivered in connection herewith shall be
> continuing and shall survive the Closing for a period
> of three (3) years following the Closing Date, or such
> longer period as may be expressly provided herein . . .
> but shall terminate and be of no further force and
> effect . . .

The closing date for the assets sale was February 21, 1989, which
in turn set the termination date as February 21, 1992.  So,
before the accident involving the AMTI heating unit occurred, and

before any claims were brought in this action, the indemnification agreement expired. Washington, therefore, is not obligated to indemnify THI under the terms of the assets purchase agreement and is entitled to summary judgment as to that claim.

**B. <u>The Stock Purchase Agreement Indemnification Provision</u>**

The parties' stock purchase agreement, made in 1992, also includes an indemnification provision:

> 7.1 <u>Indemnification by Seller</u> Provided that notice thereof is timely given by [THI], promptly upon demand, [Washington] shall defend, indemnify and hold harmless [THI] and/or the Company against and in respect of the following matters set forth in this Section 7.1
>
> . . .
> 7.1.2 Any and all costs or expenses, losses, damages, claims or deficiencies arising from the assertion against [THI], or the Company, of any claim for the payment or performance of any and all obligations or liabilities of the Company, of each and every nature whatsoever, arising from or applicable to any period prior to the Closing Date [February 26, 1992].
>
> . . .
> 7.1.4 Any and all actions, suits, proceedings, demands, assessments, judgments, costs and expenses (including by way of example and not limitation, all legal and accounting fees and court costs) incidental, directly or indirectly, to the foregoing.

Washington again asserts that the limitations period, which is included in the same section with the indemnity clause, bars THI's claim and that the potential liabilities to Suburban are beyond the scope of the agreement.

1. <u>Limitation Period</u>

7

Section seven, titled "Indemnification, Survival of Representations and Warranties," includes a time limitation clause in addition to the indemnification provision:

> Survival of Representations and Warranties. All representations and warranties in this Agreement, and in any certificate, instrument, exhibit or document delivered with or pursuant to the terms of this Agreement, shall be deemed to be material and to have been relied upon by the recipient party, notwithstanding any investigation heretofore or hereafter made and shall survive the Closing until the first anniversary of the Closing Date [February 26, 1992], except that any representation or warranty relating to any tax returns filed by the Company and any payments due by the Company thereunder shall extend until the expiration of the applicable statutory period of limitations for the payment of such taxes (giving effect to any waiver or extension thereof, if later).

Unlike the indemnity clause in the assets purchase agreement, the indemnity clause in the stock purchase agreement does not expressly include the limitations period provided in the "Survival" clause in section seven, nor does the clause have general applicability to provisions in the agreement. By its terms, the one year time period provided in the "Survival" clause applies only to "representations and warranties in this Agreement." Sections two, three, and four of the agreement are each titled "Representations and Warranties" and pertain to particular subject matter. Each section begins with a clause that states which party is making the representations and warranties contained in that section. The other sections of the agreement, including the indemnification clause, do not contain express statements of "representations and warranties."

8

Taking the "Survival" clause in the context of the entire agreement, therefore, the language is plain and unambiguous: the time limitation applies to those sections that provide "representations and warranties" rather than to all aspects of the agreement. To construe the clause more broadly would require reading into the language an interpretation of its terms that is not apparent from the plain meaning in the context of the agreement. See Northwestern Nat'l Ins. Co., 672 A.2d at 43 ("a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.") Accordingly, the time limitation in section seven cannot serve as the basis for summary judgment.

2. Scope of the Indemnity Provision

Alternatively, Washington argues that the indemnity provision does not apply to Suburban's contribution claims against THI because the claims in the underlying action arose after the stock sale and because all of AMTI's obligations and liabilities were transferred by the assets purchase agreement. The indemnification clause applies to:

> Any and all costs or expenses, losses, damages, claims
> or deficiencies arising from the assertion against
> [THI], or the Company, of any claim for the payment or
> performance of any and all obligations or liabilities
> of the Company, of each and every nature whatsoever,
> arising from or applicable to any period prior to the
> Closing Date [February 26, 1992].

9

Washington contends that "obligations or liabilities . . . arising from or applicable to any period prior to the Closing Date" excludes Suburban's claims against THI because the accident occurred after February 26, 1992.  THI argues that the clause provides indemnification for "obligations or liabilities" that resulted from AMTI's preclosing conduct so that THI is entitled to indemnification for products liability claims on products manufactured by AMTI before the closing.

"A contract of indemnity is construed to give effect to the parties' intent; in other words, only losses which reasonably appear to have been intended by the parties are compensable under such contract."  Oliver B. Cannon and Son v. Dorr-Oliver, 394 A.2d 1160, 1165 (Del. 1978).  Because either interpretation of the disputed language could reasonably have been intended by the parties, the meaning of the language and the scope of the clause is ambiguous.  See Northwestern Nat'l Ins. Co., 672 A.2d at 43. When contract language is ambiguous, the court must consider extrinsic evidence of the parties' intent at the time of the agreement.  See Klair v. Reese, 531 A.2d 219, 223 (Del. 1987). Thus, an ambiguity raises a factual issue in contract interpretation.  See id. at 222.

THI offers the affidavit of Graham S. Wood, its president and chief executive officer, in support of its contention that the parties intended that Washington would indemnify THI for

10

product liability claims[2] based on products manufactured by AMTI before the date of the stock purchase closing. Mr. Wood states that he was involved in negotiating the stock purchase agreement and that he understood that under that agreement, Washington agreed to indemnify THI for "liability for deaths and personal injuries caused by alleged defects caused by products manufactured and distributed by AMTI prior to the 1989 transfer of [AMTI] to [Washington]." Washington offers no contrary evidence or facts, but only argues its interpretation of the language, and does not address possible ambiguity.

On this record, Washington has not sustained its burden of showing that based on undisputed facts it is entitled to judgment as a matter of law.

## C.   Common-Law Indemnification

THI argues that in addition to the express indemnification provisions in both the assets and stock purchase agreements, it is entitled to common-law indemnification from Washington for claims against it due to injuries caused by AMTI's product,

---

[2]Washington again characterizes the plaintiffs' underlying claims as "product warranty claims" and argues that the assets purchase agreement transferred liability to THI for all such claims. As was discussed above, the underlying plaintiffs' claims were product liability tort claims, not product warranty claims. If, as Washington alternatively suggests, AMTI retained no "obligations or liabilities" at the time of the stock purchase agreement, the indemnification clause would have no purpose. Washington has not demonstrated that all liabilities were transferred under the assets purchase agreement nor has it offered an explanation of why the parties would include an indemnity clause that had no purpose or effect.

11

manufactured when AMTI was a subsidiary of Washington. The parties agree that Delaware law precludes a party from enlarging express obligations to indemnify by implying broader terms than are written. THI contends, however, that it is not asking for implied indemnification based on the parties' contractual relationship, but instead is entitled to indemnification on equitable principles because it is being held vicariously liable for "another's" conduct.

THI relies on a Delaware Superior Court decision to support its common-law indemnification theory. See Ianire v. University of Del., 255 A.2d 687, 695-96 (Del.Super. 1969) (holding that even if no contractual indemnity obligation could be implied, the University, whose liability was at most vicarious or passive, was entitled to common-law indemnity on equitable principles from the company, the injured worker's employer, whose liability was more active and culpable). On appeal, the Delaware Supreme Court held that the superior court's reasoning, based on an active/passive liability analysis, was error, and that the only legal basis for indemnification is an express or implied promise. Diamond State Tel. Co. v. University of Del., 269 A.2d 52, 56-57 (Del. 1970); see also Harden v. Allstate Ins. Co., 883 F. Supp. 963, 975 (D.Del. 1995). Since Delaware does not recognize a common-law indemnification duty, at least under the circumstances asserted by THI, Washington is entitled to summary judgment in its favor as to THI's common-law indemnification claim.

12

## Conclusion

For the foregoing reasons, Washington's motion for summary judgment (document no. 67) is granted as to THI's claims of express indemnity under the assets purchase agreement and common-law indemnity (counts I and III in the Third Party Complaint [document no. 43]) and is denied as to express indemnity under the stock purchase agreement (count II).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 18, 1997

cc:  John E. Friberg, Esq.
     Marc R. Scheer, Esq.
     Joseph M. McDonough, III, Esq.
     James E. Owers, Esq.
     Michael B. O'Shaughnessy, Esq.
     William L. Tanguay, Esq.

13