CONTINENTAL OIL COMPANY, a Delaware corporation, and Mexofina, S. A. de C. V., a corporation of the Republic of Mexico, Defendants Below, Appellants,

v.

PAULEY PETROLEUM, INC., Pauley Pan American Petroleum Company, corporations of the State of Delaware, and American Independent Oil Company de Mexico, S. A. de C. V., a corporation of the Republic of Mexico, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

March 14, 1969.

James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Baker, Botts, Shepherd & Coates, Houston, Tex., for appellants.

H. Albert Young, H. James Conaway, Jr., and Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, and Orris R. Hedges, Los Angeles, Cal., for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

This is an appeal from the grant of partial summary judgment to Pauley Petroleum, Inc., a Delaware corporation, to the effect that Pauley had attached property of Mexofina, S.A. de C.V., a Mexican corporation, in the hands of Continental Oil Company, a Delaware corporation. Continental and Mexofina, appearing specially to attack the attachment, appeal.*

---

* This is the third appeal to this Court in this litigation. The first, Pauley Petroleum, Inc. v. Continental Oil Co., 235 A.2d 284, upheld, over technical objections, the validity of the writ of foreign attachment. The second, Pauley Petroleum, Inc. v. Continental Oil Co., 239 A.2d 629, affirmed Chancery's refusal to enjoin prosecution of a Mexican law suit brought by Mexofina against Pauley and its subsidiaries arising out of the same transactions.

This action was commenced by Pauley against Continental and Mexofina, a wholly-owned subsidiary of Continental. The dispute grew out of oil exploration by Mexofina in Mexico under license from Petroleos Mexicanos (Pemex), a nationalized petroleum instrumentality of the Republic of Mexico. The details of the events giving rise to the cross-claims asserted against each other are not pertinent in this appeal.

The court below held that a large sum of money received by Continental from Mexofina and carried on Continental's books as "advances" was the property of Mexofina and thus subject to seizure by writ of foreign attachment. Some factual background is required.

Mexofina is wholly owned by Continental and was acquired by it in 1960 from Pauley. Pauley ultimately conveyed to Mexofina a 75% interest in certain Pemex contracts for the carrying out of oil explorations. Mexofina commenced the exploration with funds obtained by the sale of its stock to Continental for cash. Ultimately, Mexofina's exploration activities decreased and Mexofina began to accumulate from its revenues sums of unneeded capital and, in 1964, began to return such sums to Continental. By February 1, 1967, the date of the attachment in this cause, Continental had received $12,658,000 from Mexofina. It is this money, categorized as property of Mexofina, which the attachment purported to seize.

Mexofina is organized under Mexican law as a "variable capital" corporation. It has two classes of stock: Series A, which under Mexican law may not be reduced without a permit from the Ministry of Foreign Relations, and Series B, which is its variable capital and which may be reduced in accordance with its charter. In Mexofina's case the charter requirement is that action to reduce the variable capital be taken at a special stockholders' meeting and the result recorded in a special ledger.

Continental is the owner of all the stock of Mexofina, with the exception of four qualifying shares of Class A stock. It could therefore at any time have caused a reduction in the variable capital by causing the charter provisions to be followed, surrendering stock for cancellation and accepting the sums received from Mexofina as a return of capital. However, Continental did not formally cause Mexofina's variable capital to be so reduced until shortly after the attachment before us was laid in its hands.

The February, 1967 balance sheet of Mexofina under "Current Assets" lists "Advance to Conoco—$12,658,000.00." Its prior balance sheets treat the return of funds to Continental in the same fashion. The December 31, 1966 balance sheet of Mexofina, prepared by its outside auditors, shows a similar listing. Shortly thereafter, Continental confirmed to the outside auditors that its records showed as of December 31, 1966, "Advance from Mexofina—$12,658,000.00."

Primarily on the showing of the balance sheets, the court below held that the description as "advances" necessarily meant that Mexofina regarded them as an indebtedness from Continental to it and that Continental did, also, as evidenced by its confirmation of the description to the outside auditors of Mexofina. He accordingly held, since Continental had not availed itself of its indisputable right to reduce the variable capital of Mexofina in accordance with its charter, that Continental was indebted to Mexofina and that that debt had been seized by the attachment. He thus gave summary judgment for Pauley.

Continental contended that neither Mexofina nor itself ever regarded the sums of money received by it from Mexofina as creating an obligation owing from Continental to Mexofina. It contended that the various sums transmitted to Continental were to be held by it pending delivery to Mexofina of an appropriate number of its

Class B shares for cancellation in reduction of its variable capital.

As has been pointed out, Continental never actually effected a reduction in the variable capital of Mexofina. It contends that the reason for this was the possibility that Mexofina might obtain a further license from Pemex for oil exploration which would require new financing from Continental. Because of the cost of increasing Mexofina's variable capital in that event, Continental concluded to postpone the reduction of capital until the matter became clear.

Continental's contentions in this respect are based factually upon affidavits and despositions of officers and employees of both Mexofina and Continental. Reliance is also made upon various accounting records of Continental which, in some instances, indicate the amounts were received as advances from Mexofina and, in other instances, credit the payments as a return of capital from Mexofina.

The trial judge regarded the confirmation by Continental to the outside auditors of Mexofina of advances from Mexofina as evidence that, by that time, Continental had decided not to effect a reduction of Mexofina's variable capital. He then defined the word "advance" as the equivalent of loan and, accordingly, upheld the attachment as a valid seizure of property belonging to Mexofina.

■ We think the grant of summary judgment based as it is purely upon an ascribed meaning to the word "advance" was error. The word does not have a fixed and single meaning. It is in fact a word of wide significance depending for its meaning upon its content, or upon the surrounding circumstances. 2 C.J.S. Advance p. 496; Eisenhardt v. Schmidt, 27 N.J.Super. 76, 98 A.2d 698. It may, of course, have the meaning of a loan, but it is not necessarily limited to that meaning. Grone v. Economic Life Ins. Co., 38 Del.Ch. 158, 80 A. 809.

The trial judge, however, limited the word to only one of its possible meanings.

The conclusion reached required that the surrounding circumstances of these transactions be ignored or rejected. This may not be, for the meaning in which the word has been used is determined by those circumstances. In point of fact, the trial judge weighed all the evidence and rejected that supporting the contentions of Continental as to the intent with which the transfers to Continental were made.

■ This, we think, was error, for the function of the judge in passing on a motion for summary judgment is not to weigh evidence and to accept that which seems to him to have the greater weight. His function is rather to determine whether or not there is any evidence supporting a favorable conclusion to the nonmoving party. When that is the state of the record, it is improper to grant summary judgment. Watson v. Shellhorn & Hill, Inc., Del., 221 A.2d 506.

■ A further reason exists why summary judgment should not have been granted in this case. Continental's contention is that the moneys were transferred to it by Mexofina with the intention to effect a reduction in Mexofina's variable capital. This is one of the surrounding circumstances that must be considered in the ultimate event it is established as a fact. When an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate. 6 Moore, Federal Practice (2nd Ed.), ¶ 56.17 [41.—2]; White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738.

We are of the opinion, therefore, that this summary judgment was improvidently granted. The cause must therefore be remanded for further proceedings and the determination of the facts after full hearing. This conclusion means that we do not reach the other questions presented.

The judgment below is reversed.