VICE CHANCELLOR

# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 9, 2017
Date Decided: July 26, 2017

Gregory V. Varallo, Esquire
Rudolf Koch, Esquire
Robert L. Burns, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

William B. Chandler, Esquire
Ian R. Liston, Esquire
Jessica A. Montellese, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Lewis H. Lazarus, Esquire
Patricia A. Winston, Esquire
Meghan A. Adams, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

David S. Eagle, Esquire
Sean M. Brennecke, Esquire
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, DE 19801

Re: *Great Hill Equity Partners IV, LP, et al. v. SIG Growth Equity Fund I, LLLP et al.*, Civil Action No. 7906-VCG

Dear Counsel:

This action concerns the acquisition of an e-commerce payments company—Plimus.[1] In September 2011, Plaintiffs Great Hill Equity Partners IV, LP and Great Hill Investors LLC (collectively, "Great Hill") purchased Plimus for $115 million via a merger. Plimus possessed two significant business relationships with third-party payment processors Paymentech, LLC ("Paymentech") and Paypal, Inc. ("Paypal"). Shortly before the merger closed, Plimus's relationship with Paymentech and Paypal ended.[2] Shortly after closing, Plimus's relationship with Paypal also ended.[3] According to the Plaintiffs, the loss of these two business relationships greatly diminished Plimus's value.

The Plaintiffs brought claims for fraud (and the aiding and abetting thereof), conspiracy, indemnification, and unjust enrichment against multiple Defendants.[4] The Defendants here consist of: Plimus's CEO, Defendant Hagai Tal; Plimus's two founders, Defendants Tomer Herzog and Daniel Kleinberg (the "Founders"); Plimus's former largest stockholder, Defendant SIG Growth Equity Fund I, LLLP ("SIG Fund"), and that stockholder's authorized agent, Defendant SIG Growth

---

[1] Unless otherwise noted, the information below is undisputed and taken from the verified pleadings, affidavits, and other evidence submitted to the Court. I note that Plimus is now known as BlueSnap, Inc.

[2] Jan. 30 2017 Transmittal Affidavit of Sarah A. Galetta, Esquire ("Galetta Aff.") Ex. 10 at B00027480. I note that the parties dispute the reason for, and proper characterization of, the termination of the relationship between Plimus and Paymentech.

[3] Galetta Aff. Ex. 197 at B00007938.

[4] *See* Verified Amended Complaint ¶¶ 169–237.

Equity Management, LLC ("SIG Management," and collectively with SIG Fund and Defendants Amir Goldman and Jonathan Klahr, "SIG" or the "SIG Defendants"); Plimus's former Vice President of Financial Strategy and Payment Solutions, Irit Segal Itshayek; and two charity stockholders that received Plimus stock by donation prior to the merger closing (the "Charity Defendants").[5]

The Plaintiffs essentially allege that certain Defendants conspired to fraudulently withhold material information concerning Plimus's deteriorating relationships with Paymentech and Paypal.[6] As a result, according to the Plaintiffs, they substantially overpaid for Plimus. Also of particular relevance to the motions before me here, the Plaintiffs additionally argue that certain Defendants paid Tal "hush money" to hide his lack of confidence in the future of Plimus during the negotiation process (referred to as the "Side Letter").[7] The Plaintiffs seek damages and, citing fraud, to hold certain stockholders, including the Charity Defendants, jointly and severally liable for damages above and beyond the pro rata share of the merger proceeds those stockholders placed into escrow as a cap on their indemnification obligations for breaches of the Company's representations and warranties.

---

[5] Defendants Tal, Goldman, Klahr, and the Founders comprised the five-member Plimus board of directors. Galetta Aff. Ex. 3 at G00069113. SIG designated Goldman and Klahr to the Plimus board. *Id.*

[6] *See id.* at ¶¶ 169–219.

[7] Plaintiffs' Answering Brief in Opposition to Defendants' Motions for Partial Summary Judgment ("Pls' Answering Br.") at 1.

Itshayek, Tal, the Founders, the SIG Defendants, and the Charity Defendants have moved for partial summary judgment pursuant to Court of Chancery Rule 56. According to these Defendants, no material dispute exists over certain distinct facts surrounding the Side Letter, Plimus's relationships with Paypal and Paymentech, and the available damages that the Plaintiffs are free to pursue. For the reasons that follow, these motions are denied.

Summary judgment may only be granted if, "on undisputed facts, the moving party establishes that he is entitled to that judgment as a matter of law."[8] The Court "must view the evidence in the light most favorable to the non-moving party."[9] The Court must not weigh evidence and instead must "determine whether or not there is any evidence supporting a favorable conclusion to the nonmoving party."[10] Of particular importance here, no right to summary judgment exists; rather, "the court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application."[11]

---

[8] *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970).
[9] *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 1998 WL 731660, at *2 (Del. Ch. Oct. 9, 1998).
[10] *In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 2014 WL 2768782, at *8 (Del. Ch. June 12, 2014) (quoting *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969)).
[11] *Id.* at *9 (citations omitted).

Critically, "[w]hen an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[12]

As an initial matter, it is clear to me that trial—scheduled mere weeks away—involving all current remaining claims and Defendants in this matter will be necessary regardless of my decision on these motions.[13] Moreover, a substantial portion of the judgment sought by the Defendants here concerns discrete factual findings.[14] However, the complex claims and issues in this matter should not be broken down into isolated "factual silos"[15] for resolution without the chance to develop a full post-trial record, particularly in light of the alleged underlying fraud.[16]

---

[12] *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969); *see also Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009) ("Where intent or state of mind is material to the claim at issue—as is the case here—summary judgment is not appropriate. In such cases, the court should evaluate the demeanor of the witnesses whose states of mind are at issue during examination at trial.") (internal quotation marks omitted).

[13] *See, e.g.*, Oral Arg. Tr. 9:4–9 (May 10, 2017) (conceding on behalf of the Charity Defendants that they will remain defendants regardless of my decision on their motion for partial summary judgment).

[14] *See, e.g.*, Defendant Itshayek's Response to Pls' Supplemental Submission at 2 ("Irit Had Limited Involvement in Due Diligence."); *id.* at 3 ("Irit's Statement of Her Expectation that Plimus Would Not Exceed a Chargeback Ratio of 1.0% in July 2011 Was Merely a Projection."); Defendant Tal's Response to Pls' Supplemental Submission at 1 ("Plimus was Dissatisfied with Paymentech's Pricing and Was Seeking Alternative Processors Prior to February 4, 2011."); Defendants Herzog's and Kleinberg's Response to Pls' Supplemental Submission at 1 ("[T]he Founders . . . had no reason to suspect that Great Hill was being purportedly misled about Paymentech . . . ."); SIG Defendants' Response to Pls' Supplemental Submission at 2 ("The Uncontroverted Evidence Confirms The SIG Defendants Did Not Act With 'Reckless Indifference.'").

[15] Oral Arg. Tr. 60:18–22 (May 10, 2017).

[16] *See, e.g.*, *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1058 (Del. Ch. 2006) (discussing this Court's respect for "the law's traditional abhorrence of fraud"); *Freeman v. Topkis*, 15 Del. 174 (Del. Super. Ct. 1893) ("The law abhors fraud of every nature and description, and will un-kennel and expose it whenever it can be found, no matter how many or what may be the

As the Plaintiffs contended at Oral Argument, they did not file individual claims for fraud related to Paymentech or to Paypal.[17] Rather, the Plaintiffs allege that the entire acquisition of Plimus was fraudulent.[18] As for the dispute over the degree of potential damages, the language of the merger agreement seems sufficiently ambiguous to me to warrant a trial to determine, among other things, the extent of the Defendants'—particularly the Charity Defendants'—understanding of their potential liability in signing the Letters of Transmittal for Shares of Capital[19] and the extent of any contractual limits on indemnification in the event of fraud.

In sum, after reviewing the briefing and the supplemental submissions, in the interests of the litigants' and judicial economy—and because a majority of the claims in this matter involve alleged fraud—it seems to me these issues would be better resolved on a post-trial record. The Motions for Partial Summary Judgment are therefore denied. I will consider the summary judgment briefing as pre-trial briefs. The parties, however, remain free to file additional pre-trial briefing as they see fit.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

---

character of the disguises which surround it.") (citation omitted) (internal quotation marks omitted).

[17] Oral Arg. Tr. 137:4–6 (May 10, 2017).

[18] *Id.*

[19] *See* Pls' Supplemental Submission in Opposition to Defendants' Motions for Partial Summary Judgment Exs. B, C at ¶ 1 (May 29, 2017) (Dkt. No. 508) ("The undersigned has reviewed and understands the Merger Agreement and the terms of the Merger, including the tax withholding, escrow and indemnification provisions of Articles 2, 10 and 11 of the Merger Agreement . . . .").

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III