# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LARRY STERCULA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 2022-0667-DH |
| VIOLET WENGERT, BRUCE | ) | |
| HEIMBACH, BETH ANNE ROBERTS, | ) | |
| AND JAY K. WILSON | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## REPORT

Report: July 8, 2025
Date Submitted: May 14, 2025

John Whitelaw, COMMUNITY LEGAL AID SOCIETY, Wilmington, Delaware; *Attorneys for Plaintiff Larry Stercula.*

Dean Campbell, LAW OFFICE OF DEAN A. CAMPBELL, P.A., Milton, Delaware; *Attorneys for Defendants Violet Wengert, Bruce Heimbach, and Beth Anne Roberts.*

Richard E. Berl, Jr., HUDSON, JONES, JAYWORK & FISHER, LLC, Lewes, Delaware; *Attorneys for Defendant Jay K. Wilson.*

**HUME, M.**

This matter centers upon the relationship between former paramours Larry Stercula ("Plaintiff") and Violet Wengert. *See* Pet. for Recovery of Real Est. Due to Forgery, Constructive Tr., & Related Relief ¶ 22 [hereinafter Pet.], D.I. 1. Through this action, Plaintiff seeks recovery of real property he shared with Wengert, which he claims was fraudulently transferred to Wengert as sole owner via a forged deed. Within that same orbit are co-defendants Beth Anne Roberts,[1] Wengert's daughter, and Bruce Heimbach, Roberts's "long-time romantic companion," who both lived at the shared property. *Id.* ¶ 5. Co-defendant Jay Wilson (together with Wengert, Roberts, and Heimbach, "Defendants") joined this volatile mix by purchasing real property from Wengert. *Id.* ¶ 11. Aside from being the purchaser, it does not appear that Wilson has a connection to Plaintiff or the co-defendants.

Defendants moved for summary judgment. Wengert and Heimbach contend that Plaintiff cannot provide clear and convincing evidence sufficient to overcome the notarial presumption when there are conflicting lay and expert witnesses because those witnesses effectively "cancel" each other out. Wilson argues he is a bona fide

---

[1] Roberts passed away on December 2, 2023. Suggestion of Death, D.I. 44. At this point, Roberts has not been dismissed from the action, nor has her estate been substituted as a defendant. Under Court of Chancery Rule 25(a), a motion for substitution must be "made within 90 days after service of a statement noting the death[.]" Ct. Ch. R. 25(a)(1). If a motion is not made, "the action . . . against the decedent must be dismissed." *Id.*

purchaser; therefore, he is entitled to confirmation of his title. This report denies summary judgment for two reasons: First, under Delaware's well-established evidentiary standards, credibility is a factual issue best resolved by the finder of fact after a trial on the merits. Second, the validity of the deed purportedly transferring the real property to Wengert as sole owner must be resolved before Wilson's requested relief can be properly granted.

## I.    BACKGROUND

Stercula and Wengert's relationship lasted for more than twenty years. *Id.* ¶ 22. During the relationship, Stercula was incarcerated from 2010 to early 2016, and again from 2018 to mid-2021. *Id.* ¶ 2.

In 2006, Plaintiff and Wengert relocated to Delaware. *Id.* ¶ 9. Plaintiff sold his residence in Pennsylvania and purchased property at 12 Holly Leaf Drive, Georgetown, Delaware (the "Property"). *See id.* The Property was conveyed by deed to Stercula and Wengert as joint tenants with the right of survivorship (the "2006 Deed").[2] *Id.*; Pl.'s Answering Br. in Opp'n to Defs. Violet Wengert & Bruce

---

[2] At oral argument, there was some confusion surrounding *how* Plaintiff and Wengert jointly owned the property and the impact that would have on future conveyances. Though generally disfavored in Delaware, *Short v. Milby*, 64 A.2d 36 (Del. Ch. 1949), the 2006 Deed created a joint tenancy with the right of survivorship ("JTROS"). *See* 25 *Del. C.* § 701; *Banks v. Banks*, 135 A.3d 311, 317 & n.26 (Del. Ch. 2016) (creating a JTROS requires the four unities of: (1) time, meaning cotenants acquired their interest at the same time; (2) title, meaning cotenants received their interest in the same conveyance; (3)

Heimbach's Mot. for Summ. J. [hereinafter Pl.'s WH AB], Ex. 1, D.I. 60. [3] The Property consists of a single-family home and two undeveloped lots. *Id.* ¶ 8. On March 14, 2016, Plaintiff and Wengert purportedly conveyed the Property by deed to Wengert as sole owner (the "2016 Deed"). *Id.*; Pl.'s WH AB, Ex. 3; Def[s.] Violet Wengert & Bruce Heimbach[']s Opening Br. in Supp. of Mot. for Summ. J. [hereinafter WH OB], Ex. E, D.I. 54. Laura Rogers, a Delaware Notary Public, notarized the 2016 Deed. WH OB, Ex. E. Although Rogers has no independent recollection of notarizing the 2016 Deed, she testified in her deposition that she followed her typical practice as a notary by requiring signers to present identification. WH OB, Ex. F at 10–12, 16. Plaintiff alleges that his signature on the 2016 Deed was forged, despite notarization and Heimbach's attestation as a witness. Pet. ¶ 10.

---

interest, meaning cotenants received equal ownership interest; and (4) possession, meaning cotenants have the same undivided right of possession); Pl.'s WH AB, Ex. 1. Though the Coast Survey land survey recorded with the 2006 Deed refers to Plaintiff and Wengert as "Lawrence & Violet Stercula," there is no evidence that the two were ever married. *See id.* Accordingly, they could not have owned the Property as tenants by the entirety, which is an ownership structure reserved exclusively for married couples.

[3] The 2006 Deed was submitted as an exhibit multiple times. *See* WH OB, Ex. C; Pl.'s WH AB, Ex. 1.

Wengert purportedly conveyed the Property to Wilson by deed on August 12, 2019 (the "2019 Deed").[4]  *Id.* ¶ 11.  Plaintiff claims Wengert used the forged 2016 Deed to support an apparently clear title.  *Id.*  Plaintiff further contends that Heimbach also signed the 2019 Deed as a witness.  *Id.*  Plaintiff asserts that he did not learn of the 2016 Deed or 2019 Deed conveyances until after Wilson purchased the Property in 2019.  *Id.* at ¶ 12.

## II.    PROCEDURAL HISTORY

Plaintiff initiated this action on July 29, 2022.  *See* Pet.  On December 2, 2024, Defendants filed Motions for Summary Judgment (the "Motions").  [Defs. Wengert & Heimbach's] Mot. for Summ. J., D.I. 51; Def. Wilson's Mot. for Summ. J., D.I. 52.  Defendants filed their opening briefs in support of the Motions on December 10, 2024.  WH OB; Def. Wilson's Opening Br. in Supp. of Mot. for Summ. J. [hereinafter Wilson OB], D.I. 55.  On January 22, 2025, Plaintiff filed his answering briefs in opposition to the Motions.  Pl.'s Answering Br. in Opp'n to Def. Jay K. Wilson's Mot. for Summ. J., D.I. 59; Pl.'s WH AB.  Wengert and Heimbach filed their reply in further support of the Motions on February 4, 2025.  Defs. Violet Wengert & Bruce Heimbach's Reply Br. in Supp. of Mot. for Summ. J. [hereinafter

---

[4] A copy of the 2019 Deed was not provided as an exhibit.  It is unclear if the 2019 Deed is a quitclaim deed, Delaware's default special warranty deed, or some other instrument purporting to convey an interest in the Property.  *See* 25 *Del. C.* §§ 121, 131.

WH RB], D.I. 61.  The next day, Wilson filed his reply in further support of the Motions.  Def. Wilson's Reply Br., D.I. 62.  And the Court heard oral argument on the Motions on May 14.  *See* JAF, D.I. 68.  Trial has not been scheduled.

## III. ANALYSIS

Defendants seek summary judgment, arguing that there is no genuine issue of material fact before the Court.  "There is no 'right' to a summary judgment." *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).  Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Ct. Ch. R. 56(c).  "Material facts in genuine dispute that 'may reasonably be resolved in favor of either party' require denial of summary judgment in order to be properly resolved by [the fact finder]." *GMG Ins. Agency v. Margolis Edelstein*, 319 A.3d 256, 262 (Del. 2024).  As the Court has explained, "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On any application for summary judgment, "the Court must view the evidence in the light most favorable to the non-moving party." *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  "Summary judgment must be denied 'if there is any reasonable hypothesis

5

by which the opposing party may recover, or if there is a dispute as to a material fact or inferences to be drawn therefrom.'" *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 1998 WL 731660, at *2 (Del. Ch. Oct. 9, 1998) (quoting *Seagraves v. Urstadt Prop. Co.*, 1996 WL 159626, at *3 (Del. Ch. Apr. 1, 1996)).

The Court may deny summary judgment if it decides, upon examination of the facts presented, that it is desirable to inquire into or develop more thoroughly the facts at trial in order to clarify the law or its application. *See, e.g.*, *Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918–19 (Del. 1965) (holding a court's desire to inquire further into the facts is sufficient reason to deny a motion for summary judgment); *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962) (finding summary judgment will not be granted where a court desires a more thorough review of facts to clarify the application of law); *Phillips v. Schifino*, 2009 WL 5174328, at *1 (Del. Ch. Dec. 18, 2009) ("[A] motion for summary judgment may be denied if the Court 'decides upon a preliminary examination of the presented facts that it is desirable to inquire into or develop more thoroughly the facts at trial.'" (citation modified) (quoting *Mentor Graphics*, 1998 WL 731660, at *3)). As Chancellor Chandler explained while serving on the Delaware Superior Court:

> Before a court can apply the law, it must have an adequate factual basis for doing so. And in some situations a fuller development of the facts may serve to clarify the law or help the court determine its application to the case. In other words, summary judgment, with ever-lurking issues of fact, is a treacherous shortcut. . . . [S]ound judicial administration may dictate withholding judgment until the whole

6

> factual structure stands upon a solid foundation following a plenary trial where proof can be fully developed, questions answered and issues clearly focused.

*McCabe v. Wilson*, 1986 WL 8008, at *2 (Del. Super. June 26, 1986) (citations omitted). And if the parties present "conflicting evidence such that there is an issue of material fact, summary judgment must be denied." *Deloitte LLP*, 2009 WL 5200657, at *3 (citing *Watson v. Taylor*, 2003 WL 21810822, at *2 (Del. Aug. 4, 2003) (TABLE)).

### A. The Three Vs Of Deeds: Valid, Voidable, And Void.

Title 25, Section 121 provides the preferred language for a deed. Generally, a deed must contain the following elements to be "valid and effectual": (1) in writing, (2) describe the specific property conveyed, (3) identify both the grantor and grantee, (4) be signed by the grantor, and (5) be delivered to the grantee or recorded. *See* 25 *Del. C.* § 121. Deeds that satisfy these requirements are presumed valid and pass title to the grantee.

In Delaware, a deed may be valid absent notarization. *See* 25 *Del. C.* §§ 121, 132. Even so, notarized deeds benefit from the notarial presumption. The notarial presumption assumes that notarial acts are performed correctly and in accordance with the law, unless there is evidence to the contrary.

Even when deeds are notarized, several circumstances can render deeds either voidable[5] or void.[6] This distinction is "of great practical importance" because it can impact the rights of the grantee. *See Void*, BLACK'S LAW DICTIONARY (12th ed. 2024). Here, the validity of Plaintiff's signature on the 2016 Deed is a material fact. If Plaintiff's signature on the 2016 Deed is indeed forged, it directly bears on the outcome of the issues involved in this case.

## B. The Notarial Presumption Is A Rebuttable Presumption.

Defendants Wengert and Heimbach contend that in light of the conflicting lay and expert witnesses, the notarial presumption is so strong it should overcome factual disputes. They urge the Court to follow Vice Chancellor Glasscock's ruling in *Krapf v. Krapf*, 2015 WL 230457 (Del. Ch. Jan. 16, 2015). Defendants allege that the Court in *Krapf* found that one expert testified in favor of the plaintiff and one expert testified in favor of the defendant. WH OB at 11. Defendants Wengert and

---

[5] Voidable means that an act is "[v]alid until annulled; . . . capable of being affirmed or rejected at the option of one of the parties." *Voidable*, BLACK'S LAW DICTIONARY (12th ed. 2024). *See, e.g.*, *Coleman v. Newborn*, 948 A.2d 422, 429 (Del. Ch. 2007) (stating deed transferred in self-dealing transaction is voidable); *Barrows v. Bowen*, 1994 WL 198724, at \*1, 6 (finding deed granted by legally incapacitated person voidable); *Wallace v. Lewis*, 4 Del. 75 (Del. Super. 1843) (determining that deed by infant conveying real property was voidable upon infant reaching adulthood).

[6] Void means that an act is "[o]f no legal effect; to null." *Void*, BLACK'S LAW DICTIONARY (12th ed. 2024). *See, e.g.*, *Faraone v. Kenyon*, 2004 WL 550745 (Del. Ch. Mar. 15, 2004) (a quitclaim deed lacking a legal description of the property being conveyed or a deed that is the product of fraud is void).

Heimbach suggest that the Court held "that such competing testimony would not be sufficient to overcome the presumption of genuineness rising from the notarial act." *Id.* This generous reading fails to account for differing factual and procedural circumstances.

*Krapf* involved an allegation that signatures on a deed were forged. There, the petitioner and the respondent employed handwriting experts whose results were a mixed bag. As Vice Chancellor Glasscock found, there were:

> [T]wo expert opinions that agree that [one parent's] signature was probably not genuine, differ somewhat as to [the other parent's] signature, and do not contest the validity of the signature of the witness. In light of the other evidence from credible witnesses, discussed below, however, I need not rely conclusively on the experts' opinions.

*Krapf*, 2015 WL 23045, at *3.

That is not the case here. First, I note the differing procedural posture—*Krapf* was decided *after* the Court observed live fact and expert witness testimony at an evidentiary hearing. Second, I disagree that the *rebuttable* notarial presumption is imbued with a strength that overwhelms the need to make credibility determinations.

## C. Witness Credibility Is A Factual Issue.

Defendants note that Stercula is expected to testify that he did not sign the 2016 Deed and Heimbach is expected to testify that he witnessed Stercula sign the 2016 Deed. WH OB at 11. Defendants argue that since the conflicting fact and

9

expert witnesses "cancel each other out,"[7] the Court must rely upon the notarial presumption and rule in Defendants' favor on the Motions.

Along with the fact witnesses' disagreement, the parties present a classic battle of the experts.[8] The parties have engaged handwriting experts who have presented different opinions about the validity of Plaintiff's purported signature on the 2016 Deed. Plaintiff's handwriting expert concludes that Stercula's purported signature on the 2016 Deed is not genuine. WH OB, Ex. G. However, Defendants' handwriting expert claims that it is "nearly impossible" to form a conclusion about the authenticity of the signature because "the lack of exemplars from the 2016 time period, absence of an adequate number of exemplars and the fact that the questioned and known documents were machine copies[]"[9] would render a handwriting analysis inconclusive. WH OB, Ex. H at 3. These are more than just contrary conclusions about whether the signature on the 2016 Deed is, in fact, Stercula's.

---

[7] Oral Argument Tr. 8:24; WH RB at 1–2.

[8] As Vice Chancellor Laster explained, the term is often used "as a shorthand reference to" describe "the clash of contrary, and often antagonistic, expert opinions . . . ." *See In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 556–57 (Del. Ch. 2014) (quoting *In re Shell Oil Co.*, 607 A.2d 1213, 1222 (Del. 1992)).

[9] Defendants' expert notes that he received the exhibits examined in preparation of his report "through US Postal Service First Class Mail . . . ([a]ll [d]ocuments [m]achine [c]opied—[n]o [o]riginals)[.]" WH OB, Ex. H at 3. It is unclear if Defendants' expert reviewed "machine copies" because that is what Plaintiff produced to Defendants, or if Defendants possess originals or clearer scanned copies.

Plaintiff's expert believes that there is an adequate evidentiary basis to render an opinion. But Defendants' expert is unable to render an opinion based on those same evidentiary underpinnings. Thus, Defendants' expert does not simply contradict Plaintiff's expert's conclusion. Rather, his assertion that "handwriting analysis based upon the documents presented should be inconclusive" calls into question Plaintiff's expert's ability to even render an opinion. *Id.* Whether it is Plaintiff's signature on the 2016 Deed is a material fact that is in genuine dispute, which requires further examination of each expert's credibility in making their findings.

## D. In A Bench Trial The Court Is The Finder Of Fact.

When two witnesses are diametrically opposed, as Defendants suggest here, one must be incorrect. The Court must determine credibility through the rigor of the courtroom. On a motion for summary judgment, the Court cannot weigh conflicting evidence or make credibility determinations. "This Court resolves disputes of fact and makes credibility determinations based on an evidentiary hearing or trial, not the papers." *Ross v. Keats*, 2025 WL 465651, at *1 (Del. Ch. Feb. 11, 2025); *see also Texlon Corp.*, 802 A.2d at 262 ("The trier of fact may weigh the evidence and resolve disputes only after hearing all the evidence, including live witness testimony."); *Schneider Nat'l Carriers, Inc. v. Kuntz*, 2020 WL 4012284, at *11 (Del. Ch. July 16, 2020) (denying summary judgment because "ultimate resolution

11

of this issue may turn on credibility determinations, which are not appropriate at the summary judgment stage").

Defendants Wengert and Heimbach suggest their witness cancellation theory means that the witness testimony does not meet the clear and convincing evidence standard. WH RB at 7–8. Not so. Their position does not contemplate that, in a bench trial, the Court is the finder of fact and must weigh the credibility of each witness—fact and expert alike. Defendants' misapprehension transforms qualitative evidentiary analysis, a hallmark of our American judicial system, into a mere numbers game where the side with the greater number of witnesses prevails.[10] The credibility determination is not so neatly packaged.

While Defendants argue that Plaintiff's and Heimbach's testimony will not rise to the level of clear and convincing evidence, that cannot be determined at this point. WH OB at 11. A trial judge is not permitted "to weigh the evidence or to resolve conflicts arising from pretrial documents, affidavits, depositions or other evidence[,]" regardless of the "ultimate substantive burden[,]" because those determinations are reserved for the trier of fact—even in a bench trial—"after hearing *all* the evidence, including live witness testimony that, as here, may be in

---

[10] I find Counsel's legal contentions perplexing and caution against flimsy legal positions. This position is unsound under existing law and does not appear to argue "for extending, modifying, or reversing existing law or for establishing new law[.]" *See* Ct. Ch. R. 11(b).

conflict." *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1149–50 (Del. 2002) (footnote omitted) (citing *Anderson*, 477 U.S. at 254). Further, the clear and convincing evidence standard can be met by credible testimony, even uncorroborated testimony. *Shuttleworth v. Abramo*, 1992 WL 24985, at *1 (Del. Ch. Feb. 12, 1992). *Cf. Krapf*, 2015 WL 23045, at *3 (explaining that "[i]n light of the other evidence from credible [fact] witnesses . . . [the Court] need not rely conclusively on the experts' opinions"); *id.* at *3–5 (outlining three categories of "other evidence from credible [fact] witnesses" supporting the deed's validity); *In re Est. of Dugger*, 1999 WL 1204837, at *1–2 (Del. Ch. Dec. 3, 1999) (finding unrebutted fact witness testimony provided clear and convincing evidence that a deed "was forged, and thus invalid"[11] even though the signature was "witnessed and notarized by a member of the Delaware Bar").

On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. Plaintiff alleges that he did not sign the 2016 Deed. Defendants claim that Plaintiff signed the 2016 Deed in Heimbach's presence. In the light most favorable to the non-movant, Plaintiff will present

---

[11] The definition of "invalid" is synonymous with the definition of "void." *Compare invalid*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Not legally binding . . . ."), *with void*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Of no legal effect . . . .").

credible testimony that he did not sign the 2016 Deed and his expert witness will corroborate this testimony. This creates an issue of material fact. As this Court has held, "it would be inappropriate to grant summary judgment in a situation in which not only the credibility of testimony . . . but also . . . the genuineness of the alleged handwriting . . . is of extreme importance." *Hazel v. Cebenka*, 1980 WL 272825, at *1 (Del. Ch. July 23, 1980). "I do not believe that justice can be done in this case in the absence of a[]" trial, at which both sides can fairly present live fact and expert witness testimony. *Id.* While the notarial presumption may win the day at trial, it does not eliminate a material issue of fact on a motion for summary judgment. There is a question about whether Plaintiff's signature is genuine, with each side presenting conflicting fact and expert witnesses.

The Parties' assertions from fact and expert witnesses turn on credibility. It is improper to grant summary judgment when "there is any evidence supporting a favorable conclusion to the nonmoving party." *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969). When deciding a motion for summary judgment where credibility is at issue, the Delaware Supreme Court has held:

> If the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate. If a rational trier of fact could find any material fact that would favor the non-moving party in a determinative way (i.e., that the clear and convincing standard could be met at trial), summary judgment is inappropriate. If a trial court must weigh the evidence to a greater degree than to determine that it is hopelessly inadequate ultimately to sustain the substantive burden, summary judgment is inappropriate.

14

*Cerberus Int'l*, 794 A.2d at 1149. Because the Court faces conflicting lay and expert witness testimony, it must assess the evidence and make credibility determinations. Summary judgment is not appropriate.

### E. Defendant Wilson's Motion For Summary Judgment Requires Resolution Of Factual Issues.

There is a material issue of fact about the validity of Plaintiff's purported signature on the 2016 Deed. A fuller development of the facts is required, so the best course is to proceed to trial. I note that Defendant Wilson has filed a Motion for Summary Judgment on grounds that he was a bona fide purchaser without notice of Stercula's claim. Wilson OB at 5. I will defer ruling on Defendant Wilson's Motion for Summary Judgment until there is a more complete fact structure in the case. As discussed above, there are genuine issues of material fact surrounding the 2016 Deed's validity. The same factual issues must be resolved before the Court can properly rule on Defendant Wilson's motion. Indeed, if the Court determines that Stercula validly signed the 2016 Deed, Wilson's motion would be moot.

## IV. CONCLUSION

There are genuine issues of material fact created by the testimony of both lay and expert witnesses. In the light most favorable to the Plaintiff, the clear and convincing standard could be met at trial. Defendants' Wengert and Heimbach's Motion for Summary Judgment is denied. A ruling on Defendant Wilson's Motion for Summary Judgment is deferred until after trial. The parties shall contact the

15

Court within ten days of the date of this ruling to schedule a trial date and submit a

proposed pretrial scheduling order.