**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 28, 2025

R. Bruce McNew
Cooch and Taylor, P.A.
The Brandywine Building
1000 N. West Street, Suite 1500
P.O. Box 1680
Wilmington, Delaware 19899

Lisa M. Zwally
Bryan T. Reed
Greenberg Traurig, LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801

Re:  *Mitchell Partners, L.P. v. AMFI Corp. et al.*,
C.A. No. 2020-0985-KSJM

Dear Counsel:

This decision resolves the motions of Plaintiff Mitchell Partners, L.P.

("Plaintiff") for summary judgment on Counts I and III of the Second Amended

Verified Class Action Complaint (the "Second Amended Complaint").[1]

## I.  BACKGROUND

I assume the reader's familiarity with this action and refer to my earlier

decisions for additional background.[2]

---

[1] *See* C.A. No. 2020-0985-KSJM, Dockets ("Dkts.") 108 ("Second Am. Compl."), 143 (Mot. for Summ. J. on Count I of the Second Am. Compl.), 169 (Mot. for Summ. J. as to Count III of the Second Am. Compl.).

[2] *See Mitchell P'rs, L.P. v. AMFI Corp.*, 2024 WL 3289389 (Del. Ch. July 3, 2024) (resolving motion to dismiss Counts III through V of the Second Amended Complaint), *reargument denied*, 2024 WL 3650692 (Del. Ch. Aug. 5, 2024); *Mitchell P'rs, L.P. v. AMFI Corp.*, 2024 WL 3290843 (Del. Ch. July 3, 2024) (resolving motion for exceptions to the special magistrate report).

The parties dispute whether AMFI Corporation ("AMFI" or the "Company") validly issued 20,000 shares of Class B common stock in 1982 (the "Class B Shares"). This dispute has manifested in claims concerning AMFI's stock ledger.

Plaintiff holds AMFI Class A common stock.[3] In late 2020, Plaintiff received AMFI's 2019 financial statement.[4] It stated that AMFI had 20,000 Class B Shares outstanding.[5] Plaintiff alleges that this came as a surprise, because Plaintiff was unaware of the Class B Shares before that time.[6] All of the Class B Shares are currently held by AMFI subsidiaries and affiliates, T.H.B. Corp., Little Sabine, Inc., Dunes Motel, Inc., and Holi Corp. (the "Subsidiary Defendants").[7] Plaintiff sent a demand to inspect AMFI's stock ledger under Section 220 of the Delaware General Corporation Law ("DGCL") to learn more about the Class B Shares.[8] In response, AMFI offered to produce a series of "stockholder cards" for inspection.[9]

---

[3] Dkt. 135 ("Answer to Second Am. Compl.") ¶ 8.

[4] *See* Dkt. 99, Ex. 1 (AMFI Corporation and Subsidiaries Consolidated Financial Statement, December 31, 2019).

[5] *Id*. at 1.

[6] Second Am. Compl. ¶ 4.

[7] Answer to Second Am. Compl. ¶¶ 11–14.

[8] *Id*. ¶ 6.

[9] *See* Second Am. Compl. ¶ 3 (citing Ex. B (Letter from Defendants' counsel responding to Plaintiff's Section 220 demand)); Second Am. Compl., Ex. B at 2 (stating that AMFI "does not maintain a current stock list in the regular course of business" but noting that "[t]he Company does maintain stockholder cards, and those will be made available for inspection"); Answer to Second Am. Compl. ¶ 3 (stating that Ex. B "speaks for itself").

Victoria Corporaal, AMFI's Transfer Agent and Rule 30(b)(6) representative regarding the Company's stock ledger, explained that AMFI maintains five types of records regarding AMFI stock ownership. Those are: "active" stock cards; "inactive" stock cards; "transfer packages"; a current list of the names and addresses of all stockholders of record in an electronic document; and a "control card."[10]

The active and inactive cards are hardcopy cardstock cards.[11] A set is kept for each individual stockholder itemizing the sales and purchases of stock in that stockholder's name.[12] A set might contain multiple cards.[13] Only the initial card contains the stockholder's contact information and address.[14] Active cards reflect current stockholders. Inactive cards reflect former stockholders and have a current balance of zero shares.[15] None of the stock cards reflect AMFI's Class B Shares,[16] and until this litigation, Corporaal, who had worked on and off at the Company since the 1970's,[17] was unaware that AMFI had Class B Shares.[18]

---

[10] Dkt. 83 ("Corporaal Dep. Tr.") at 29:14–30:22, 34:4–18, 37:24–39:24, 44:4–6.

[11] *Id*. at 47:3–12.

[12] Dkt. 10 ¶¶ 2–3.

[13] Corporaal Dep. Tr. at 83:5–84:5.

[14] *See* Dkt. 143 ("Pl.'s Count I Opening Br."), Ex. A; Corporaal Dep. Tr. at 83:5–84:8.

[15] Corporaal Dep. Tr. at 34:7–11, 66:10–17.

[16] *Id*. at 103:25–104:2 ("Q. Do you have any kind of a ledger card for a class B share? A. I do not.").

[17] *Id*. at 11:14–12:1.

[18] *Id*. at 117:22–118:3 ("Q. Did you ever get instruction one way or another to exclude non-voting stocks [from the stock cards]? A. I didn't know we had non-voting stocks.

The transfer packages are communications regarding stock transfers.[19] They include any cancelled stock certificates.[20] They are grouped by year.[21] It is Corporaal's practice to destroy the oldest records once she runs out of storage room for them.[22]

The current list and names of stockholders is an electronic document that Corporaal updates every time shares are retired or transferred.[23]

What Corporaal refers to as the "control card" is a running total of the number of outstanding shares of AMFI stock.[24] She updates it when shares are cancelled or retired. She refers to the card as the ledger.[25]

When Plaintiff initiated this litigation in November 2020, the original complaint contained two causes of action.[26] In Count I, Plaintiff alleged that AMFI failed to maintain an accurate stock ledger in violation of Sections 219 and 220 of the DGCL.[27] In Count II, Mitchell Partners alleged that the individual defendants—Jack

---

Q. So as far as you know, throughout your entire tenure as the transfer person at AMFI, AMFI has only had one class of voting stock? A. That is correct.").

[19] *Id*. at 29:19–30:17.

[20] *Id*.

[21] *Id.* at 31:6–12.

[22] *Id.* at 29:1–32:10.

[23] *Id.* at 37:24–38:2.

[24] *Id.* at 39:11–40:22.

[25] *Id.*

[26] *See* Dkt. 1.

[27] *Id*. ¶¶ 22–27.

B. Yancy, Carolyn Pugh, Barbara Woodbury, Marilyn Hess, and Carol Harrison (the "Director Defendants" and together with AMFI and the Subsidiary Defendants, "Defendants")—breached their fiduciary duties by failing to cause AMFI to create and maintain an adequate stock ledger.[28]

Plaintiff twice amended its complaint.[29] The operative complaint is the Second Amended Complaint, which contains five Counts:

- Count I alleges that the Company failed to keep and maintain a valid stock ledger.[30]

- Count II alleges the Director Defendants breached their fiduciary duties by failing to cause AMFI to keep and maintain a valid stock ledger.[31]

- Count III seeks three alternative forms of declaratory relief as to AMFI and the Subsidiary Defendants: (i) that no Class B Shares are issued or outstanding; or (ii) that if the Class B Shares were issued, the issuance was defective and they are void; or (iii) if the Class B Shares were validly issued, the transfers of the shares to the Subsidiary Defendants constituted waste.[32]

- Count IV alleges that the Director Defendants breached their fiduciary duties with respect to the issuance and conveyance of the Class B Shares.[33]

- Count V, pled in the alternative if the Class B Shares are found to be validly issued and outstanding, seeks declaratory relief against all

---

[28] *Id.* ¶¶ 28–31.

[29] *See* Dkts. 93 (First Am. Compl.), 108 (Second Am. Compl.). The Second Amended Complaint repeats paragraph numbers 55–61. *See* Second Am. Compl. at 44–47. Accordingly, where necessary, citations to the Second Amended Complaint will be by page number and paragraph number.

[30] Second Am. Compl. at 47 ¶¶ 55–60.

[31] *Id.* at 47–48 ¶¶ 61–64.

[32] *Id.* ¶¶ 65–71.

[33] *Id.* ¶¶ 72–74.

Defendants and asserts breaches of fiduciary duty against Defendants Woodbury and Hess related to an allegedly materially omissive proxy statement AMFI issued in connection with a reverse stock split the Company conducted in 1983.[34]

Defendants moved for summary judgment in 2022 as to the original complaint, which only contained Counts I and II.[35] AMFI took the position that the stock cards comprised the Company's stock ledger and that AMFI need not record transactions in Class B Shares because they are non-voting.[36] I appointed a Special Magistrate to hear Defendants' motion for summary judgment.[37] The Special Magistrate disagreed with Defendants' position, reasoning that Delaware law required a company's stock ledger to account for all of its stock, including non-voting shares.[38] The Special Magistrate's Report and Recommendation proposed that I deny Defendants' motion in full and grant summary judgment *sua sponte* in favor of Plaintiff on Count I.[39]

In a letter decision dated July 3, 2024 (the "Letter Decision"), I adopted the Special Magistrate's recommendation in large part, denying Defendants' motion for

---

[34] *Id.* ¶¶ 75–79.

[35] Dkt. 30.

[36] *See id.* at 9 n.5 ("The Class B stock is non-voting. The stock ledger only includes the Class A voting shares as required by Section 219(c). As such, the Class B shares are not required to be included on the stock ledger.").

[37] Dkt. 97.

[38] *See* Dkt. 109 at 11–12.

[39] *Id.* at 14.

summary judgment on both Counts.[40]  I declined to grant summary judgment for

Plaintiff on Count I because Plaintiff had not moved for that relief.[41]

On October 7, 2024, Plaintiff moved for summary judgment on Count I of the

Second Amended Complaint.  It is substantively identical to Count I of the original

complaint.  Plaintiff then moved for summary judgment on Count III of the Second

Amended Complaint on January 27, 2025.  The parties completed briefing on March

13, 2025,[42] and the court heard oral argument on May 2, 2025.[43]

In their answering brief in opposition to Plaintiff's motion for summary

judgment as to Count I, Defendants state that sometime after the court issued the

Letter Decision, AMFI prepared a "supplemented and corrected" stock ledger.[44]  The

brief did not attach the updated ledger as an exhibit, but it did append a declaration

from Corporaal regarding the ledger (the "Corporaal Declaration").[45]  In the

declaration, Corporaal states that she supplemented AMFI's stock ledger to include:

> the names and addresses of all of the current and past
> shareholders, the type of stock issued (*i.e.*, Class A voting
> or Class B nonvoting), the number of shares owned, the

---

[40] *See generally* Dkt. 131.

[41] *Id.* at 7 ("I do not adopt the Special Magistrate's recommendation to grant summary judgment *sua sponte* in favor of Mitchell Partners.  If Mitchell Partners so moves, I will consider that motion.").

[42] *See* Dkts. 143 (Pl.'s Count I Opening Br.), 153 ("Defs.' Count I Answering Br."), 154 (Pl.'s Count I Reply Br.), 169 ("Pl.'s Count III Opening Br."), 190 ("Defs.' Count III Answering Br."), 192 ("Pl.'s Count III Reply Br.").

[43] *See* Dkt. 216.

[44] Defs.' Count I Answering Br. at 3.

[45] *See* Dkt. 153 (Corporaal Decl.).

> certificate numbers, the dates of acquisition and, if applicable, the date of any transfer or retirement, the transaction confirmations, and a record of Class A outstanding and the Class B outstanding.[46]

The declaration did not attach the new ledger as an exhibit.

On April 17, 2025, less than a month before the hearing on the motions for summary judgment and over four months after briefing on Plaintiff's motion as to Count I was complete, Defendants filed a letter with the court. The letter stated that it attached a hardcopy of the new ledger and a flash drive, both of which were provided to the court but not filed on the docket.[47] At oral argument, Plaintiff stated that Defendants did not provide them with a copy of the amended ledger "until well after briefing [on Plaintiff's motion as to Count I] was closed, even though we asked."[48]

## II.   ANALYSIS

Under Court of Chancery Rule 56, "[s]ummary judgment may be granted if there are no material issues of fact in dispute and the moving party is entitled to judgment as a matter of law."[49] "There is no 'right' to a summary judgment."[50] "Even where the facts are not in dispute, a court may decline to grant summary judgment

---

[46] *Id*. ¶ 6.

[47] Dkt. 208.

[48] Dkt. 220 at 9:4–10.

[49] *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 241 (Del. 2009).

[50] *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 6373167, at *1 (Del. Ch. Oct. 30, 2020) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)).

where a more thorough exploration of the facts is needed to properly apply the law to the circumstances."[51]  "When an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[52]  The court may "decline to decide the merits of the case in a summary adjudication where it is not reasonably certain that there is no triable issue."[53]

### A. Plaintiff Is Entitled To Summary Judgment On Count I.

In support of summary judgment on Count I of the Second Amended Complaint, Plaintiff argues that the Letter Decision denying Defendants' motion for summary judgment resolved all material facts and legal issues relevant to Count I, and that the Letter Decision is the law of the case.[54]  Plaintiff also reasserts its arguments made in connection with the earlier summary judgment motion as a basis for judgment in its favor.[55]

AMFI makes two arguments in response.  First, it argues that summary judgment is premature because Plaintiff has "not identified or obtained Court approval of [a] Class or . . . Derivative Representative as required by Rules 23 and

---

[51] *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *5 (Del. Ch. Mar. 9, 1995).

[52] *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969).

[53] *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1024 (Del. Super. Ct. 2021) (cleaned up) (quoting *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Ct. Sept. 1, 2020)) (interpreting parallel rule of the Delaware Superior Court).

[54] Pl.'s Count I Opening Br. at 20–21.

[55] *Id.* at 21–26.

23.1."[56]  Second, it argues that Count I is moot because AMFI has supplemented and corrected the stock ledger.[57]

AMFI's first argument is misguided for a few reasons.  First, it is unclear why Mitchell Partners is pursuing Count I as a class claim as opposed to an individual claim.  In any event, the court can later determine whether class certification is appropriate and need not do so to resolve summary judgment on the legal issues raised by Count I.[58]  Second, Defendants base their argument on the fact that James Mitchell, the human who verified the Second Amended Complaint on behalf of Mitchell Partners, passed away in May 2024.[59]  Defendants argue that Mitchell's death prevents Mitchell Partners from pursuing a representative action.[60]  But the entity-Plaintiff, Mitchell Partners, did not die.  It can still pursue this litigation individually and on behalf of a putative class, if class certification is later deemed appropriate.

It is hard to know what to make of Defendants' second argument because the new ledger is not properly before the court on this motion.  Under Court of Chancery Rule 56(e):

---

[56] Defs.' Count I Answering Br. at 4.

[57] *Id*. at 2–4.

[58] *See, e.g.*, *Turner v. Bernstein*, 768 A.2d 24, 36–38 (Del. Ch. 2000) (granting class certification after entering summary judgment against the director defendants on the question of liability); *see also id*. at 37 n.43 (collecting cases).

[59] Defs.' Count I Answering Br. at 4–5.

[60] *Id*.

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The Court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, admissions on file, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.[61]

Unpacking this, Rule 56(e) contemplates that a party opposing summary judgment will demonstrate specific facts showing that there is a genuine issue for trial. The most common way to do so is by affidavit, although the Rule contemplates that the court might allow other forms of evidence ("as otherwise permitted by this rule"). When a Rule 56(e) affidavit refers to documents, then the Rule requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."[62]

As to Count I, Defendants chose to dispute facts through the Corporaal Declaration. Ignoring for the moment that the declaration is not an affidavit, it is

---

[61] Ct. Ch. R. 56(e).

[62] *Id.*

problematic because it does not attach the critical document it references—the new stock ledger.

The fact that Defendants' counsel later sent a copy of the new stock ledger to the court does not remedy this procedural deficiency for a few reasons. First, Defendants' counsel submitted the updated ledger to the court and provided it to Plaintiff long after the briefing as to Count I was completed. As a result, Plaintiff had no meaningful opportunity to substantively address Defendants' claims about the new ledger in briefing. Second, and this might seem nitpicky, but the mandate that a Rule 56(e) affidavit and any document it discusses be submitted together assures the court that the document discussed in an affidavit is the same as the one attached.

For these reasons, Defendants have failed to show a dispute of material fact. The record is the same one that was before me on the prior motion. That record reflects that Defendants failed to maintain a stock ledger in violation of Section 219. Plaintiff is entitled to summary judgment on Count I.

Given how this litigation has played out to date, this is likely a pyrrhic victory for Plaintiff. To show compliance with the court's ruling, Defendants will undoubtedly point to the stock ledger they have previously prepared. Plaintiff has already signaled that it views the ledger as deficient. This dispute will likely engender further motion practice and give rise to additional evidentiary issues. In all likelihood, the parties will be going to trial on the sufficiency of AMFI's stock ledger. I hope that I am wrong and the parties resolve this issue without further

court intervention. This would be particularly prudent given that the dispute over the stock ledger seems just a proxy for the parties' real dispute concerning the Class B Shares, to which this decision now turns.

**B.      Plaintiff Is Not Entitled To Summary Judgment On Count III.**

In Count III, Plaintiff seeks a declaration that no Class B Shares are issued and outstanding. Plaintiff argues that the documents effectuating AMFI's 1982 reorganization (the "Articles of Merger") were required to "state the entire terms of the [r]eorganization and contain no provision issuing or exchanging any Class B shares."[63] Plaintiff reasons that "[b]ecause the Articles of Merger were legally required to set forth all terms and conditions of the [r]eorganization, Exhibit 1 [the Articles of Merger] conclusively establishes that the [r]eorganization was accomplished without any Class B share being issued by AMFI."[64]

Plaintiff's theory that the Articles of Merger are "conclusive and binding" as to the stock issuance does not work.[65] Plaintiff cites no authority for its theory that if the issuance of the Class B Shares is not reflected in the Articles of Merger, then they were not issued. Plaintiff provides legal support for the uncontroversial propositions that under Delaware and Florida law, articles of merger are effective upon filing, and merger agreements must set out the specific terms and conditions of a merger.[66] But

---

[63] Pl.'s Count III Opening Br. at 12.

[64] *Id.* at 3 (emphasis omitted).

[65] *Id.* at 10.

[66] *Id.* at 10–12.

neither point requires me to limit my review to the Articles of Merger in deciding whether Plaintiff is entitled to summary judgment on Count III. Plaintiff has not carried its burden.

Plaintiff's motion for summary judgment as to Count III is denied.

## III.  CONCLUSION

Plaintiff (alone) is entitled to summary judgment on Count I. The court has not yet considered whether Count I is a class claim or certified the class. Plaintiff's motion for summary judgment as to Count III is denied.

Although I did not rely on the documents submitted with Defendants' briefing (although not under a Rule 56 affidavit) for the purpose of resolving Plaintiff's motion, it is clear from them that there are genuine factual disputes as to whether the Company successfully issued the Class B Shares in 1982. Again, there is no right to move for summary judgment.[67] The court will not entertain any further motions for summary judgment in this action. The parties are ordered to confer and set a time for trial on all remaining claims. If the parties do not wish to go to trial, then they need to attempt again to reach an out-of-court resolution.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[67] *Telxon*, 802 A.2d at 262.